IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 11-cv-01790-RPM

IVONNA EDKINS,

    Plaintiff,

v.

JONES INTERNATIONAL UNIVERSITY, Ltd.,

    Defendant.

---

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Born, raised and educated in Poland, Ivonna Edkins came to the United States in 1987. She is a citizen of this country. She received a master's degree from the University of Phoenix, an online university, in 2000. In October, 2007, Ms. Edkins was employed by University of Phoenix as campus director and posted her resume on Higheredjobs.com. That resume came to the attention of Terry Erdle, president of Jones Knowledge, Inc., parent of Jones International University (JIU), an online university competing with Phoenix University and other such companies. After negotiations, Ms. Edkins accepted an offer letter from Mr. Erdle, dated September 5, 2007, for employment as Vice President of Enrollment at a base salary of $180,000 with additional benefits and compensation. Her employment was approved by Glenn Jones, owner of JIU, Jones Knowledge and other companies in other lines of business. The plaintiff began her work at JIU in October, 2007.

At that time JIU was not making a profit. The business model was the operation of a call center of academic counselors (AC's) to recruit students. The principal focus of the plaintiff's

work was management of the call center and her performance was measured by the number of new student starts and course registrations obtained by the AC's she supervised.

Glenn Jones had achieved success in other lines of business and set performance goals that were much higher than what JIU had achieved before Ms. Edkins. To meet these goals Ms. Edkins increased the number of AC's by changing from direct hiring to the use of temporary workers, training them and hiring those who proved to be productive. This "temp-to-hire" model was approved by Mr. Jones but other executives at JIU disagreed with it as not cost effective.

Although his performance targets were not being met, Mr. Jones promoted Ms. Edkins to Vice Chancellor of Admissions in May, 2008, because he saw improvements in admissions and wanted to provide positive reinforcement. She received salary increases of 20% in her first nine months.

Bruce Cunningham, a lawyer, went to work in the office of general counsel at JIU in 2005. Mary Ann Krawchuk was then General Counsel. According to Ms. Krawchuk, Mr. Jones instructed her to hire a man and her relationship with Bruce Cunningham was contentious. (Pl. Ex. 37). After developing a close relationship with Glenn Jones, Mr. Cunningham began involvement with operations, including admissions. By November, 2008, Mr. Cunningham became a problem for Ms. Edkins. Glenn Jones told her she was to work closely with Mr. Cunningham and he involved himself directly with her staff, holding meetings with them that excluded her.

The plaintiff was divorced and dating a man in the Vodka business at that time. Mr. Cunningham made inquiries about Ms. Edkins' personal life and this relationship. Knowing of her background, Mr. Cunningham referred to the plaintiff's ethnic origin at times in a derogatory

manner, calling her "Polska" and suggesting that if she married her "Vodka man" she would not have to work.

JIU's new student enrollment increased substantially by August, 2008, when it reached a plateau. In planning a budget in the Fall of 2008, Mr. Jones set a goal of 111% growth in new student enrollments and to double the number of AC's. Ms. Edkins and others thought that such an increase was an unrealistic expectation. She complained that the telephone system and related technology in use was outdated and inadequate.

The goal was not being met by March, 2009. Mr. Cunningham increased his involvement with admissions. His role was formalized on March 2, 2009, when Mr. Jones announced the formation of Tiger Team One, which did not include Ms. Edkins, and explained that Mr. Cunningham's decisions were to be taken as having been made by Mr. Jones.

On March 30, 2009, Mr. Cunningham hired Dominick Arteca as Director of Admissions, reporting to Ms. Edkins. That position had not been filled previously and Ms. Edkins did not approve of the hiring. She thought that there were qualified women at JIU who should have been considered. Although Ms. Edkins was made responsible for training Mr. Arteca, he told her he did not need training. When Ms. Edkins reported this resistance to Mr. Cunningham by e-mail, he replied in support of Mr. Arteca and sent an e-mail to Mr. Jones that Ms. Edkins' behavior was not acceptable. Mr. Jones received the e-mail from Mr. Cunningham on the evening of April 6, 2009. On the next day, Mr. Jones decided to fire Ms. Edkins. He delegated that task to Bruce Cunningham. On April 9, 2009, at a meeting Ms. Edkins had scheduled with Mr. Cunningham to discuss admissions and enrollment, he abruptly told her that JIU had lost trust in her and her employment was terminated, effective immediately. The Human Resources

Director, Marcia Parent, was present and gave the plaintiff financial information relevant to termination, including an announcement that Ms. Edkins was to receive a 2% pay increase, retroactive to January 1, 2009, based on her 2008 performance.

Bruce Cunningham took over as Acting Vice Chancellor of Admissions and implemented changes Edkins had proposed, including infrastructure and process improvements.  After receiving a letter complaining of gender discrimination, Jones University hired Debbie Love as Vice-Chancellor of Admissions and Bruce Cunningham returned to his position as General Counsel.

The plaintiff claims that Bruce Cunningham's conduct created a hostile work environment for her because of her Polish origin and her gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, which ultimately led to her discharge on April 9, 2009, based on pretextual grounds.  She asserts that Glenn Jones' decision to terminate her employment was influenced by Bruce Cunningham and that Glenn Jones, himself, had a gender bias as reflected in the treatment of other women in executive positions and his disparate treatment of Bruce Cunningham after complaints about his conduct in 2010.  Bruce Cunningham and JIU parted ways on October 15, 2011.  That was after complaints of discrimination by other women in executive positions.

There is sufficient evidence to support a *prima facie* case of discriminatory treatment because of a blending of the protected groups of national origin, Polish, and gender, female.

The stated reason given for termination is a failure of performance.  The determinative question is whether that was a pretextual mask for discrimination.  There is ample evidence that Bruce Cunningham's personality and vaulting ambition to become a dominant player at JIU and

Jones Knowledge was a problem for all of the people at JIU.  He was arrogant, disrespectful, dismissive and domineering in his treatment of all of them.  He had gained the trust of Glenn Jones who gave him almost full authority to manage the business of JIU.

It is also clear that Glenn Jones had little patience with the unprofitability of JIU and was not realistic in his demands for improved performance.  He looked only at results and did not accept excuses or listen to explanations.  He hired a consulting group to do an analysis of the business and received its report which was critical of the technology in use.

It is significant that Glenn Jones decided to fire Ms. Edkins immediately after receiving an e-mail from Bruce Cunningham critical of Ms. Edkins in her reaction to what was insubordinate conduct by Arteca.  That was impulsive, ill-advised and unfair.  A jury may find that it was substantially motivated by a gender bias. There is ample evidence that Bruce Cunningham was a domineering male who was disrespectful and dismissive of women with executive responsibilities.  He had no previous experience in education or business management.  His ability to undermine them and to persuade Glenn Jones to allow him to manage the enterprise is indicative of a gender bias in the company.

There is some evidence that Bruce Cunningham was also influenced by a perception that a woman from Poland was not qualified for the position Ms. Edkins occupied.

This case should be determined by a jury.  It is

ORDERED that the defendant's motion for summary judgment is denied.

DATED: December 4th, 2012

                                       BY THE COURT:

                                       s/Richard P. Matsch
                                       _____
                                       Richard P. Matsch, Senior District Judge